UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RIGID CONSTRUCTORS, LLC                                CIVIL ACTION

VERSUS

ELA GROUP, INC., ET AL.                                NO. 20-00666-BAJ-RLB

RULING AND ORDER

In December 2019 Plaintiff Rigid Constructors, LLC contracted with Defendant ELA Group, Inc. to provide sidewalk improvements at the Louisiana National Cemetery, a federally funded project. Immediately thereafter, Plaintiff unilaterally subcontracted the entirety of its work to another construction company, in violation of an express contracted term requiring ELA Group's written consent prior to any subcontract. ELA Group then attempted to rescind the contract, and refused payment of $124,100 to Plaintiff, citing Plaintiff's subcontract *and* Plaintiff's failure to pay its subcontractor.

In October 2020, Plaintiff sued ELA Group and its surety, Defendant United Fire and Casualty Company (collectively, "Defendants"), seeking to recover the $124,100 allegedly due under the contract. Now before the Court is Plaintiff's **Motion for Summary Judgment (Doc. 12)**. Defendants oppose Plaintiff's Motion. (Doc. 13). For the reasons stated herein, Plaintiff's Motion will be denied, and this matter will be submitted to the jury for decision.

I. BACKGROUND

    A. Summary Judgment Evidence[1]

The facts set forth below are undisputed, as set forth in Plaintiff's Statement Of Established Facts (Doc. 12-1, "Rigid SOF"), Defendants' Opposing Statement Of Material Facts (Doc. 13 at pp. 14-26, "Opposing SOF"), Plaintiff's Reply To Defendants' Statement Of Facts (Doc. 14-1, "Rigid Reply SOF"), the parties' joint Pretrial Order (Doc. 20, "Joint PTO"), and the record evidence submitted in support of these pleadings.

Plaintiff and Defendant ELA Group are each industrial construction companies. On December 5, 2019, ELA Group, as prime contractor, and Plaintiff, as first-tier subcontractor, entered into a contract (the "Contract") related to a broader federally-funded improvement project at the Louisiana National Cemetery, in Zachary, Louisiana (the "National Cemetery Project"). (Joint PTO ¶ F(1)). Defendant United Fire and Casualty Company issued a surety bond to ELA Group securing payment for work performed under the Contract. (Joint PTO ¶ F(4)).

Under the basic terms of the Contract, Plaintiff agreed "to furnish and to complete" drives, sidewalk improvements, and grading for the National Cemetery

---

[1] Plaintiff accompanied its Complaint with a "Verification" sworn by Plaintiff's CEO Cody Fortier (Doc. 1, Doc. 1-5). The U.S. Court of Appeals for the Fifth Circuit instructs that "[a] plaintiff's verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of Fed. R. Civ. P. 56." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and under penalty of perjury. Fed. Rule Civ. P. 56(c)(4); *see also* 28 U.S.C. § 1746. Here, Plaintiff's verification does not state that is based on Mr. Fortier's personal knowledge, and is not sworn under penalty of perjury. (*See* Doc. 1-5). Accordingly, Plaintiff's Complaint it is not competent summary judgment evidence and is disregarded for present purposes.

Project. (Doc. 12-3 at p. 15). In return, ELA Group agreed to pay Plaintiff "the total sum of" $184,705, "subject to additions and deductions authorized pursuant to the Contract." (*Id.*).

Additionally, and critically, the Contract incorporated terms set forth in an attachment styled "Attachment #1 General Conditions to Contract." (Doc. 12-3 at pp. 16-20, the "Attachment"). Three provisions in the Attachment are relevant here.

First, Section 4.01 allowed ELA Group to withhold payment(s) for Plaintiff's "Breach … of any provision or obligation of this Agreement":

> 4.01 Monthly Progress Payments. … (c) In the event the Contractor believes any of the conditions listed below warrant such action, the Contractor may withhold from monthly progress payments due hereunder sums deemed necessary to protect the Contractor and the Owner from any losses on account of: Defective work not remedied; Failure of the Subcontractor to pay bills for labor and/or materials furnished in conjunction with the subcontracted work; … Damages to another subcontractor; or Breach by the Subcontractor of any provision or obligation of this Agreement.

(Doc. 12-3 at p. 17).

Second, Section 10.01 required Plaintiff to obtain ELA Group's written consent before subcontracting any work under the Contract to another contractor:

> 10.1 Additional Obligations of Subcontractor. In addition to the other engagements of the Subcontractor, Subcontractor hereby agrees that he shall: …(b) Not assign this subcontract or any amounts due or to become due hereunder without written consent of the Contractor; nor subcontract the whole of this Agreement without written consent of the Contractor; no [sic] further subcontract portions of this Agreement without written notification to the Contractor.

(Doc. 12-3 at p. 20).

Third, Section 11.02 set forth a merger clause, expressly stating that "[t]his Agreement contains the entire agreement of the parties":

3

> 11.02 Entire Agreement. This Agreement contains the entire agreement of the parties. Subcontractor hereby agrees and acknowledges that no representations or warranties of any kind have been made by the Contractor or its employees other than those expressed herein. All prior agreements respecting the subject matter thereof have been incorporated in the terms herein and are no longer of any force or effect. All modifications to this Agreement shall be in writing signed by the parties.

(Doc. 12-3 at p. 20).

After executing the Contract, Plaintiff immediately "subcontracted its work" on the National Cemetery Project to another contractor, *without* obtaining ELA Group's written consent. (*See* Opposing SOF ¶¶ 3-5; Rigid Reply SOF ¶¶ 3-5). Thereafter, Plaintiff submitted three applications for payment to ELA Group seeking, in sum, $147,660: specifically, (1) Contractor's Application for Payment No. 1, dated January 20, 2020, in the amount of $23,560; (2) Contractor's Application for Payment No. 2, dated March 30, 2020 in the amount of $68,680; and (3) Contractor's Application for Payment No. 3, dated April 27, 2020 in the amount of $55,420. (Joint PTO ¶ F(5)). ELA Group paid Plaintiff's first Application for Payment in full. (Joint PTO ¶ F(6)). To this day, however, ELA Group has refused to pay Applications for Payment No. 2 *and* No. 3. (Joint PTO ¶ F(7)).

ELA Group's reasons for its refusal are the crux of the instant dispute. On May 15, 2020, ELA Group's Project Manager, Arthur Roddam, emailed Plaintiff's Project Manager, Thomas Cortez, proposing "a mutual termination of contract," citing Plaintiff's decision to subcontract its work on the National Cemetery Project to yet another contractor, *and* Plaintiff's subsequent failure to pay its subcontractor. (Doc. 13 at p. 90). Mr. Roddam's May 15 email stated:

4

> Thomas, due to recent event's [sic] ELA Group, Inc. proposes to Rigid Constructors, LLC a mutual termination of contract. Having been contacted by the subcontractor of Rigid Constructors, LLC on this project for nonpayment, under the "Miller Act" ELA Group, Inc. is required by law to pay that third tier subcontractor. ELA Group, Inc. has issued payment to the subcontractor in full for materials and work performed. Coordinate removal of any equipment onsite with the site superintendent Amy Johnston, after site conditions will allow removal without causing unnecessary damage to existing roadways.
>
> Sincerely,
>
> Arthur R. Roddam

(Doc. 30 at p. 90).

Notably, Plaintiff does *not* dispute that it failed to pay its subcontractor for work performed on the National Cemetery Project,[2] *or* that ELA Group directly paid Plaintiff's subcontractor for the improvements that Plaintiff was contracted to perform under the Contract. (*See* Opposing SOF ¶ 25; Rigid Reply SOF ¶ 25[3]).

---

[2] Plaintiff blames ELA Group for its failure to pay its subcontractor, stating: "Rigid Constructors could not pay its subcontractor for the amounts invoiced on [Applications for Payment No. 2 and No. 3] because Rigid Constructors was not paid by ELA Group." (*See* Rigid Reply SOF ¶13).

[3] Plaintiff raises two objections to the Court's consideration of the fact that ELA Group paid Plaintiff's subcontractor directly. First, Plaintiff "denies" this proposed fact, yet fails to cite any evidence to support its denial. (*See* Rigid Reply SOF ¶ 25). This Court has repeatedly warned that bald denials cannot be credited at summary judgment. *E.g.*, *Weary v. Lumber Liquidators, Inc.*, No. 19-cv-00698, 2022 WL 1598341, at *2 n.2 (M.D. La. May 19, 2022) (Jackson, J.)

Second, Plaintiff complains that this proposed fact "should be stricken" because ELA Group is surreptitiously "attempting to assert the affirmative defenses of payment and/or set-off," despite having failed to include these defenses in its Answer. (Rigid Reply SOF ¶ 25). This argument is a non-starter. Quite simply, a statement of fact is not a legal defense. Further, and in any event, ELA Group's Answer includes as an affirmative defense that "Rigid failed to properly comply with the project standards and requirements which are predicate to any recovery." (Doc. 7 at ¶ 19). In this case, the Contract at issue expressly defines "Failure of the Subcontractor to pay bills for labor and/or materials furnished in conjunction with the subcontracted work," "Damages to another subcontractor," *and* "Breach by the Subcontractor of any provision or obligation of this Agreement" as grounds for ELA

**B. Procedural History**

On October 5, 2020, Plaintiff initiated this action, asserting breach of the Contract, and seeking to recover payment of the unpaid Applications for Payment No. 2 and 3 ($124,100, total), as well as statutory penalties and attorneys fees under Louisiana law. (Doc. 1).

Now Plaintiff moves for summary judgment, insisting that there is no contest that it executed "a valid Contract with ELA Group, performed work under the Contract at the direction and under the supervision of ELA Group, but was not paid for the work actually performed." (Doc. 12-2 at p. 1). Defendants oppose Plaintiff's Motion, disputing whether Plaintiff adequately performed under the Contract and citing multiple alleged breaches, including that Plaintiff subcontracted its work without first obtaining ELA Group's written consent, and thereafter failed to pay its subcontractor. (Doc. 13). For reasons set forth below, summary judgment will be denied, and this matter will be submitted to the jury.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

Group to withhold payment. (Doc. 12-3 at p. 17). As such, ELA Group's affirmative defense is broad enough to encompass the fact that ELA Group paid Plaintiff's subcontractor directly.

Accordingly, consistent with Local Civil Rules 56(c) and 56(f), the Court rejects Plaintiff's objections, and deems admitted for present purposes that ELA Group paid Plaintiff's subcontractor directly for work performed on the National Cemetery Project. *See Weary*, 2022 WL 1598341, at *2 n.2.

6

Fed. R. Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [her] claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### III. DISCUSSION

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. C.C. art. 1906. The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and resulting damages. *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 2014-2592 (La. 12/8/15), 193 So. 3d 1110, 1115 (citing La. C.C. art. 1994). Even when these basic elements are established, however, "[a]n obligee may not recover damages when his own bad faith has caused the obligor's failure to perform or when, at the time of the contract, he has concealed from the obligor facts that he knew or should have known would cause a failure." La. C.C. art. 2003. To the point: "Plainly a party cannot claim damages for a default which his own default has caused, or for the nonperformance of a contract with reference to which he himself is in default." *Sitman & Burton v. Lindsey*, 48 So. 646, 646 (La. 1908) (plaintiff's breach of contracted obligation to deliver lumber was excused by

7

defendant's prior breach of contracted obligation to pay for the same).

Here, certainly, Plaintiff has produced evidence supporting the basic elements of its claim for breach of contract: indeed, it is *undisputed* that Plaintiff and ELA Group executed the Contract in December 2019, that under the Contract ELA Group agreed to pay Plaintiff for work performed on the National Cemetery Project, and that ELA Group thereafter refused payment to Plaintiff, to the tune of $124,100. This, however, is not enough to entitle Plaintiff to judgment at this stage. Why? Because the undisputed evidence also shows that ELA Group's failure to pay occurred only *after* Plaintiff breached the Contract by subcontracting its work on the National Cemetery Project *without* obtaining ELA Group's written consent, *and* that Plaintiff thereafter failed to pay its subcontractor, prompting ELA Group to pay the subcontractor directly. The evidence further shows that it was ELA Group's *express right* under the Contract to withhold payment in the face of Plaintiff's breach. This evidence, standing alone, creates a genuine dispute of material fact as to whether Plaintiff's bad faith caused ELA Group's failure to pay the disputed Applications for Payment No. 2 and No. 3, thereby precluding summary judgment.[4] *See* La. C.C. art. 2003; *Sitman*, 48 So. at 646; *cf. Lamar Contractors, Inc. v. Kacco, Inc.*, 2015-1430 (La. 5/3/16), 189 So. 3d 394, 399  (contractor was entitled under contract to withhold

---

[4] As indicated above, Defendants have submitted summary judgment evidence showing that Plaintiff committed additional breaches of the Contract. The Court does not consider this additional evidence at this time because it determines that Plaintiff's unauthorized subcontract coupled with Plaintiff's failure to pay its subcontractor is sufficient to create a genuine dispute as to whether Plaintiff' acted in bad faith, separate and apart from any additional alleged breaches of the Contract. The Court's ruling herein in no way precludes Defendants from presenting evidence of Plaintiff's additional alleged breaches at trial.

payment from subcontractor based on subcontractor's breach of contract term requiring subcontractor to provide sufficient materials and manpower; interpreting La. C.C. art. 2003); *see also Apache Deepwater, LLC v. W&T Offshore, Inc.*, No. 15-cv-0063, 2017 WL 6326141, at *3 (S.D. Tex. May 31, 2017) (Hittner, J.) ("[*Lamar Contractors,* 189 So. 3d 394] in effect establishes a two-step process for showing entitlement to relief under Article 2003. … [T]he obligor must first establish the obligee has also failed to perform a contractual obligation that caused the obligor's failure to perform. Only once an obligor establishes a failure of the obligee is there entitlement to relief under either the bad faith or negligence provision, and then it becomes relevant whether the facts support a bad faith or negligence finding."), *aff'd, Apache Deepwater, L.L.C. v. W&T Offshore, Inc.,* 930 F.3d 647 (5th Cir. 2019).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Summary Judgment (Doc. 12)** is be and is hereby **DENIED.**

Baton Rouge, Louisiana, this 22nd day of September 2022

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**